**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO.: *14 - 3921*

DIVISION

**IRISH CHANNEL FUNDING, L.L.C.**

**VERSUS**

**DIALYSIS CLINIC, INC.**

**SECTION 15**

FILED:_____

**DEPUTY CLERK**

DALE N. ATKINS
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112
504-407-0000

**PETITION FOR POSSESSION OF LEASED PREMISES**

**NOW INTO COURT**, through undersigned counsel, come Irish Channel Funding, L.L.C.

("ICF" or "Plaintiff"), a limited liability company authorized and doing business in the State of

Louisiana, who respectfully aver as follows:

DATE: 4/23/2014 at 14:13
CASE#: 2014 - 03921  SEC.: 15
RECEIPT#: 434018

1.

ICF petitions to evict from the leased premises, the Defendant, Dialysis Clinic, Inc. ("DCI"),

for failure to pay rent.

| | PRICE | PAID | BAL |
|---|---|---|---|
| MOTION TO RESET HEARING | | | |
| | $ 47.00 | $ 47.00 | $ 0.00 |
| | $ 444.50 | $ 444.50 | $ 0.00 |
| FAX FEES | | | |
| | $ 65.00 | $ 65.00 | $ 0.00 |
| JSC | | | |
| | $ 33.00 | $ 33.00 | $ 0.00 |
| INDIGENT LEGAL FEE | | | |
| | $ 10.00 | $ 10.00 | $ 0.00 |
| BUILDING FUND FEE | | | |
| | $ 25.00 | $ 25.00 | $ 0.00 |

2.

Defendant, DCI, is a Tennessee corporation with its principal place of business in the state of

Tennessee, and is authorized to do and is doing business in the State of Louisiana.

3.

The Defendant's monthly rent is $12,112.00. As such, this Court has jurisdiction over

this eviction proceeding. *See* La. Code Civ. Proc. Ann. art. 4844.

4.

The leased premises is located in Orleans Parish. Therefore, venue is proper in this Court.

*See* La. Code Civ. Proc. Ann. art. 80(A)(3).

TOTAL PAID CASE # 201403921:  $614.50
RECEIPT TOTAL $614.50
AMOUNT RECEIVED $614.50
CHANGE DUE $.00

5.

On or about December 18, 2012, ICF and DCI entered into a Commercial Lease Agreement

("Lease") for a leased premises located at 1661 Canal Street, Suite 1001, New Orleans, Louisiana

70112 (the "Premises"). The defendant entered into this Lease for the operation of its dialysis clinic.

The term of the lease was one hundred twenty (120) months. The Lease is the best evidence of its

terms and conditions and is attached and incorporated hereto as Exhibit A.

**EXHIBIT**

**A**



6.

Pursuant to Section 3 of the Lease, the term of the Lease commenced upon the earlier of:

"(i)    substantial completion of Tenant Improvements on, and receipt of, a Certificate of Occupancy and Louisiana Department of Health and Hospitals licensure for the Leased Premises; or

(ii)    March 1, 2014."

7.

In addition, pursuant to Section 3 of the Lease, on or about December 28, 2012, DCI began possessing the Premises for purposes of tenant improvements.

8.

The obligation of DCI to pay rent is addressed in Section 7 which reads, "The commencement of this Lease for purposes of its term and Tenant's obligation to pay rent shall begin on the date set forth in Section 3 hereof."

9.

To date, ICF has never received any rent payment from the Defendant.

10.

Section 24 of the Lease states that: "In the event a party fails to observe or perform any other of the terms, covenants, or conditions of this Lease on its part to be observed or performed within thirty (30) days after written notice from the non-defaulting specifying the nature of such failure . . . then the defaulting party shall be deemed to be in default and the non-defaulting party may, at its option, terminate the lease and recover damages allowed by law.

11.

Section 27 of the Lease states that: "Either party to this Lease shall provide any notices under this Lease in written form to the other party and forwarded via certified United States Mail with return receipt requested or other carrier service that provides proof of delivery. Notice to the Tenant shall be to both its local clinic administrator and to its corporate office at and to: Attention: President, Dialysis Clinic, Inc., Suite 500, 1633 Church Street, Nashville, Tennessee 37203."

12.

On or about March 9, 2014, by certified mail, ICF made demand upon DCI for its first rental payment plus late fee within the thirty (30) day cure period. ICF mailed the "notice" letters to the aforementioned address and to the local office of DCI. The letters and signed receipts are attached hereto as Exhibit B.

13.

On April 3, 2014, through its counsel, DCI informed ICF that: (1) the March and April rents were being held in trust by counsel; (2) DCI had no intention of turning over the rent payments within the thirty (30) days; and (3) DCI was not in breach of the Lease.

14.

The Lease does not provide DCI the ability to withhold rents from ICF for any reason.

15.

On April 8, 2014, in response to the April 3, 2014 letter of DCI, ICF terminated the Lease as a result of DCI's failure to pay rents to ICF. The certified letter demanded DCI to vacate and deliver possession of the premises to ICF no later than five (5) days from its receipt of the letter. Exhibit C.

16.

On April 11, 2014, through its counsel, DCI informed ICF that DCI was not in breach of the Lease and refused to vacate the Premises.

17.

No payments have been received by ICF and the Defendant is in default under the lease.

18.

Accordingly, Irish Channel Funding, L.L.C., moves that the Defendant, Dialysis Clinic, Inc., be served with a Rule to Show Cause why possession should not be delivered pursuant to La. Code Civ. Proc. Ann. art. 4731(A) for non-payment of rent.

WHEREFORE, at the conclusion of the proceeding, Irish Channel Funding, L.L.C. prays that the Defendant, Dialysis Clinic, Inc., be evicted from the leased premises and that possession of the premises be delivered to Irish Channel Funding, L.L.C. immediately. Further, Irish Channel Funding, L.L.C. prays that all costs associated with the proceeding be assessed upon the Defendant.

Respectfully submitted,

ALBERT J. NICAUD, #19261
JEFFREY M. SIEMSSEN, #31965
Nicaud & Sunseri, L.L.C.
3000 18th Street
Metairie, Louisiana 70002
(504) 837-1304
Attorneys for Irish Channel Funding, L.L.C.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record either by hand delivery or by placing a copy of the same in the United States Mail, postage prepaid, and correctly addressed, this 21st day of April, 2014.

JEFFREY M. SIEMSSEN

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

RECEIVED
APR 25 2014
DIVISION "A"

NO.: 2014-3921                                   DIVISION "___"

**IRISH CHANNEL FUNDING, L.L.C.**

**VERSUS**

**DIALYSIS CLINIC, INC.**

FILED
APR 21 2014
CLERK'S OFFICE
CIVIL DISTRICT COURT

FILED: _____          _____
                                              **DEPUTY CLERK**

## MOTION FOR EXPEDITED HEARING

**NOW INTO COURT,** through undersigned counsel, comes Irish Channel Funding, L.L.C.

and requests this Honorable Court to set its Rule to Show Cause for expedited hearing. The matter

contained in his Rule to Show Cause is an eviction proceeding and requires an expedited hearing

pursuant to La. Code Civ. Proc. Ann. arts. 4701 and 4731, et. seq. Accordingly, Plaintiff requests

that its Rule to Show Cause be heard at the earliest date and time available but no sooner than the

third day after service.

                               Respectfully submitted,

                               _____
                               **ALBERT J. NICAUD, #19261**
                               **JEFFREY M. SIEMSSEN, #31965**
                               Nicaud & Sunseri, L.L.C.
                               3000 18th Street
                               Metairie, Louisiana 70002
                               (504) 837-1304
                               Attorneys for Irish Channel Funding, L.L.C.

---

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing
has been served upon all counsel of record either by
hand delivery or by placing a copy of the same in the
United States Mail, postage prepaid, and correctly
addressed, this 21st day of April, 2014.

_____
JEFFERY M. SIEMSSEN

---

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO.: 2014- 3921                                    DIVISION "A"

**IRISH CHANNEL FUNDING, L.L.C.**

**VERSUS**

**DIALYSIS CLINIC, INC.**

FILED:_____        _____

                                        **DEPUTY CLERK**

**RULE TO SHOW CAUSE**

IT IS HEREBY ORDERED that Defendant, Dialysis Clinic, Inc., appear on the _6th_

day of _May_____, 2014 at _1:00 pm_ a.m. and show cause why Plaintiff's Petition for

Eviction should not be granted due to Defendant's failure to pay rent.

New Orleans, Louisiana this 25th day of _April_____, 2014.

Keisha SUMedha, Minute Clerk
Division "A"
By Order Of The Court

**PLEASE SERVE:**
**DIALYSIS CLINIC, INC.**
Through its registered agent
C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

ANY MOTION REMOVED FROM THE DOCKET AFTER THE
CASE IS SET FOR HEARING WILL REQUIRE THE MOVING
ATTORNEY TO FILE A MOTION CONTINUING/
DISMISSING THE MOTION INTO THE RECORD.

JUDGE TIFFANY G CHASE, DIVISION A

ENTERED ON MINUTES
APR 28 2014

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO.: 2014 - 3921                              DIVISION "A"

**IRISH CHANNEL FUNDING, L.L.C.**

**VERSUS**

**DIALYSIS CLINIC, INC.**

FILED:_____          _____

                                                        **DEPUTY CLERK**

### REQUEST FOR NOTICE

STATE OF LOUISIANA

PARISH OF JEFFERSON

Pursuant to Articles 1571 and 1572 of the Louisiana Code of Civil Procedure, we hereby request written notice of the date set for trial of the above numbered and entitled cause, or of the date set for trial of any pleadings or motions therein, at least ten (10) days before any trial date.

We also request notice of the signing of any final judgment, the rendition of any interlocutory order of judgment, or of any order of judgment refusing to grant a new trial, in said cause as provided by Articles 1913 and 1914 of the Louisiana Code of Civil Procedure.

<table>
<tr>
<td>

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record either by hand delivery or by placing a copy of the same in the United States Mail, postage prepaid, and correctly addressed, this 21st day of April, 2014.

_____
JEFFREY M. SIEMSSEN

</td>
<td>

Respectfully submitted,

_____
ALBERT J. NICAUD, #19261
JEFFREY M. SIEMSSEN, #31965
Nicaud &Sunseri, L.L.C.
3000 18th Street
Metairie, Louisiana 70002
(504) 837-1304
Attorneys for Irish Channel Funding, LLC

</td>
</tr>
</table>

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

## COMMERCIAL LEASE AGREEMENT

**THIS COMMERCIAL LEASE AGREEMENT** (the "Lease") is entered into as of date of the last party to sign hereon by and between **Dialysis Clinic, Inc.** ("Tenant"), a Tennessee non-profit corporation having its principal office at 1633 Church Street, Suite 500, Nashville, Tennessee 37203 and **Irish Channel Funding, LLC** ("Landlord"), a limited liability company with its domicile address at 1661 Canal Street, Suite 1002, New Orleans, Louisiana 70112. The parties agree:

1.  **Identity of the Leasehold Estate:** The address of the property subject to this leasehold estate is 1661 Canal Street, Suite 1001, New Orleans, Louisiana 70112 and consists of approximately eleven thousand three hundred fifty-five (11,355) square feet of space (hereinafter referred to as the "Leased Premises"). The Leased Premises is a portion of a larger building ("Building") and property owned by Landlord ("Landlord's Property") consisting of three (3) stories and approximately one hundred fifty thousand (150,000) square feet. Any references to the "Leased Premises" herein refer to the actual space occupied by Tenant. The diagram attached as Exhibit A is a representative drawing of both the Leased Premises and Landlord's Property and is incorporated herein via reference as if set forth verbatim herein. In addition to the Leased Premises, Landlord also grants to Tenant, its employees, agents and invitees (patients) a non-exclusive right or license to use any available sidewalks and other paved areas of Landlord's Property for access to and from the Leased Premises. Landlord shall provide Tenant four (4) reserved parking spaces adjacent to the Building for Tenant's exclusive use. Tenant shall be allowed to install signage indicating such exclusive rights. Landlord agrees that the fee for spaces shall be Fifty Dollars ($50) per space, with such amount not to increase during the term of this Lease. Tenant shall not be obligated to enter into any lease for the parking spaces.

2.  **Parking:** In the event that at least twenty (20) parking spaces are not available for lease by Tenant on a commercially reasonable basis in the 1500 block of Canal Street, Landlord agrees with ninety (90) days prior notice from Tenant, to use commercially reasonable efforts to secure on behalf of Tenant during the term of this Lease twenty (20) spaces in close proximity to the Leased Premises, and in no event further than two (2) times the distance between the Leased Premises and the existing commercial parking lot in the 1500 block of Canal Street. Notwithstanding the foregoing, Tenant shall not be obligated to enter into any lease for the parking spaces.

3.  **Term; Termination:** The term of this Lease commences upon the earlier of (i) substantial completion of Tenant Improvements on, and receipt of, a Certificate of Occupancy and Louisiana Department of Health and Hospitals licensure for the Leased Premises; or (ii) March 1, 2014, and shall expire one hundred twenty (120) months thereafter, subject to the options to renew as otherwise set forth in this Lease. The parties hereby agree that Tenant shall have access to the Leased Premises effective as of the last date of signing of this Lease for the purposes of





tenant improvements and all other such preparations necessary for the conduct of its business, but that such access shall not constitute commencement of the Lease.

4.   **Option to Renew**:  Provided that the Tenant is not in default under this Lease, then Tenant shall have the option to renew the Lease for an additional five (5) years at the expiration of the initial term and again at the expiration of the first option term for a total of two five (5) year renewal terms. All of the terms and conditions of this Lease shall apply during the renewal terms. To exercise this option to renew, Tenant shall notify Landlord of its intention in writing at least two hundred seventy-five (275) days prior to the expiration of the initial term or any renewal term.  During the two renewal terms, Tenant may terminate this Lease at any time by providing Landlord at least two hundred seventy-five (275) days prior written notice in the event Tenant determines it will build an owner-occupied replacement clinic for the business .

5.   **Rent**:  The annual rent for pursuant to this Lease shall be as follows:

a.   <u>Initial Term</u>:  The rent for the initial term shall be as follows:

Years 1 – 5: $145,344.00 per year, $12,112.00 per month
Years 6 – 10: $151,021.50 per year, $12.585.13 per month

b.   <u>Renewal Terms</u>:

i.   <u>Renewal Rent Rate</u>:  The rent for each renewal term in accordance with the terms of this Lease shall be in such amount as the Landlord and the Tenant may agree, based on the fair market value rent payable for the Leased Premises at the commencement of the relevant renewal term ("fair market value rent" for any renewal term being equal to the rental income that a property would most probably command on the open market as indicated by current rentals being paid for comparable space for comparable premises with similar buildings with similar industrial uses in the vicinity of the Leased Premises, assessed on the basis of an arm's length negotiation and not taking into account the improvements made at Tenant's expense). The parties shall sign an amendment or other comparable instrument setting forth the agreed upon rent for the renewal term at least two hundred thirty (230) days prior to the end of the current term.

ii.   <u>Mediation</u>:  In the event that the Landlord and the Tenant are unable to agree upon the rent to be paid by the Tenant during the renewal term by a date which is two hundred thirty (230) days prior to the expiration of the then current term, then the rent shall be determined by good faith mediation between the parties administered by the American Arbitration Association under its Real Estate Industry Rules.  Such mediation shall be completed no later than two hundred (200) days prior to the expiration of the then current term.  Failing resolution by mediation, the parties shall

2

arbitrate the renewal term rent dispute in accordance with the terms herein. The expense of the mediation shall be borne equally between the parties hereto.

iii. <u>Arbitration</u>: Provided that the parties have not agreed upon a negotiated or mediated renewal term rent, then the rent for the pending renewal term shall be determined by a single arbitrator. The Tenant shall by written notice to the Landlord given within fifteen (15) business days of the failure to agree by mediation propose the name of the person that it wishes to be the single arbitrator. Within fifteen (15) business days thereafter, the Landlord shall give notice to the Tenant advising whether the Landlord accepts the arbitrator proposed by the Tenant. If such notice is not given within such fifteen (15) Business Day period, the Landlord shall be deemed to have accepted the arbitrator proposed by the Tenant. In any event, if the parties cannot agree on a single arbitrator within fifteen (15) days of the initial notice, then, upon the application of either party, the arbitration shall be administered by the American Arbitration Association (AAA). The arbitrator appointed by the AAA shall be a disinterested person of recognized competence in the real estate business in the city in which the Leased Premises are situated. The rent for the pending renewal term shall be based on the basis referred to in subpart (b)(i) above. The decision of the single arbitrator shall be final and binding upon the Landlord and the Tenant only with respect to rent. All documents and proceedings with respect to the arbitration are to be kept confidential. The expense of the arbitration shall be borne equally between the parties hereto.

c.  <u>Rent Due</u>:  Rent shall be due in advance on or before the first business day of each month. Tenant shall tender monthly rent to Landlord at 1661 Canal Street, Suite 1002, New Orleans, Louisiana 70112 or at such other place as Landlord may designate upon prior written notice to Tenant. In the event that Tenant has not paid the monthly rental amount within five (5) days of its due date, then Tenant agrees to pay a late charge of Two-hundred Dollars & 00/100 ($200.00).

6.  **Tenant Improvements**: Tenant shall, at Tenant's expense, make the necessary improvements to the interior of the Leased Premises in order to prepare it for the proper operation of Tenant's business ("Tenant Improvements"). Tenant shall provide at Tenant's sole expense new heating, ventilation and air conditioning (HVAC) units to supply the Leased premises with conditioned air sufficient to meet the Tenant's intended business purposes as set forth herein.  Tenant shall provide construction plans for Landlord's reasonable review, such plans shall be reviewed within fifteen (15) business days by Landlord and either approved or provide Tenant with detailed list of any objections.

3

Landlord shall provide the following improvements:

a.   <u>Electrical</u>: Landlord shall provide at Landlord's sole expense either (i) a tap of the main electrical panel of the Building with a sub-metered extension to the Leased Premises, or (ii) new electrical service from existing electrical vault and new electrical panel, with each option required to provide a minimum of six (6) watts per square foot of the Leased Premises, exclusive of electrical load of HVAC and lights in the Leased Premises.

b.   <u>Water</u>:  Landlord shall provide at Landlord's sole expense either (i) a sub-metered connection to the existing two inch (2") water line serving the Leased Premises, or (ii) a new tap and separate meter to main municipal water line.

c.   <u>Gas</u>. Landlord shall provide at Landlord's sole expense a tap and meter for gas services to the Leased Premises.

d.   <u>Other</u>.  Landlord shall provide at Landlord's sole expense chases from Leased Premises to Building roof along existing Building column line(s) sufficient for Tenant's needs.  Landlord acknowledges that Tenant will be replacing certain exterior windows within the Leased Premises and agrees to be responsible for fifty percent (50%) of such costs, with Landlord in any event being responsible for no more than $12,000.   Such amounts shall be reimbursed to Tenant by way of rent credits in equal installments over the first eighteen (18) months of Lease payments.

Landlord and Tenant agree that Tenant may, but shall not be obligated to, make such improvements necessary for the operations of Tenant's business, including, but not limited to the installation of bathrooms, installation of a double door and off street loading zone on Claiborne Avenue side of Building to receive supplies, installation by Tenant on Landlord's behalf and at Tenant's sole cost and expense installation of replacement windows in the Leased Premises, subject to the rent credit terms of Section 6.d. above.

Any and all improvements to the Leased Premises made by Tenant shall become the property of the Landlord upon expiration of this Lease or any extension of it except that Tenant may remove its trade fixtures and equipment, including all dialysis machines, equipment and its water filtration system.  In the event any damage, excepting normal wear and tear, is caused to the Leased Premises by reason of such removal, Tenant shall repair the same.  Notwithstanding anything to the contrary in the foregoing, Tenant shall not be required to remove any fixtures, installations, alterations, or improvements, including but not limited to plumbing or piping installed by Tenant or on Tenant's behalf.

7.   **Obligation to Pay Rent**: The commencement of this Lease for purposes of its term and Tenant's obligation to pay rent shall begin on the date set forth in

4

Section 3 hereof.

8.     **Use:** Tenant shall use the Leased Premises for operation of an out-patient dialysis clinic and related medical professional offices. Tenant may use the Leased Premises for any other lawful purpose with the Landlord's consent which shall not be unreasonably withheld. Landlord acknowledges and agrees that (i) Tenant shall be provided reasonable access for semi "tractor-trailer" vehicle deliveries of supplies needed for Tenant's operations through Building loading dock located on Iberville Street, and (ii) Tenant shall be allowed to produce such waste as is customarily produced by dialysis clinics and related health care operations, including hazardous waste produced by Tenant in the normal course of business. Tenant shall be responsible for the handling and disposal of any hazardous waste produced by Tenant. Landlord hereby represents and warrants that no hazardous or other dangerous waste and/or materials are currently located in the Premises as of the date of this Lease.

9.     **Assignment and Subletting:** Tenant shall not assign this Lease or sublet any portion of the Leased Premises without the prior written consent of the Landlord which consent the Landlord shall not unreasonably withhold. Notwithstanding the foregoing, Tenant may from time to time enter into sublease or license arrangements with its associated physicians for use of space within the Leased Premises without requirement of consent of Landlord. Such Sublease or License shall be subject to this original Lease. Any assignment or sublease otherwise in violation of this provision is void.

10.    **Ordinances and Statutes:** Landlord and Tenant shall comply with all statutes, ordinances or other laws pertaining to the Leased Premises, Landlord's property and/or affecting the use of the property.

11.    **Maintenance, Repairs and Alterations:** Tenant shall, at Tenant's expense, maintain the Leased Premises in good and safe condition, including the interior surface of the walls, interior plumbing that Tenant installs within the Leased Premises and interior electrical systems that Tenant installs within the Leased Premises. Tenant shall, at Tenant's expense, obtain any janitorial services necessary for the Leased Premises. Landlord shall, at Landlord's expense, maintain Landlord's Property and the structure of the Leased Premises in a good, safe and clean condition, including the parking lot, outside paving and concrete, curb cuts, sidewalks, common areas, the building foundation, roof, structure of the walls, the exterior walls, the heating and air conditioning systems for the common areas of the Building, exterior plumbing systems, and electrical systems. Tenant shall not commit any waste or nuisance to or upon the property and within the Leased Premises.

12.    **Signage:** Tenant shall have the right at Tenant's sole expense to have the name or trade name of Tenant on the exterior of the Building above Tenant's entrance fronting Canal Street and also on Claiborne Avenue side of Building. Tenant shall have the right at Tenant's sole expense to install and maintain any necessary

5

directional signage and/or signage listing the name or trade name of Tenant on doors and entryways. Tenant shall obtain any necessary governmental approvals for installation of signage. Landlord shall have the right to review and consent to any exterior signage, and such consent shall not be unreasonably withheld or delayed.

13. **Security:** Landlord shall provide security on the Landlord's Property during normal hours of operation (for clarification, Landlord will provide security from 8 a.m. to 5 p.m. Monday-through Friday, and Tenant's business hours are from 6:00 am to 5:00 pm weekdays and Saturday, and may include Sunday hours during the term. The parties also acknowledge Tenant's hours of operation are anticipated to expand to 5:00 am to 8:00 pm weekdays and Saturdays). In the event Tenants desires to use Landlord's security services at times other than normal hours of operation and/or otherwise expand hours of operation the parties agree to negotiate in good faith regarding the providing of security and any additional costs thereof. Tenant shall also have the right to obtain its own security services for the Leased Premises at Tenant's sole cost and expense. Landlord shall provide Tenant ability to tie into the existing Building emergency management systems for Tenant's fire alarm and strobes systems on the Leased Premises. Tenant shall have the right, but no obligation, to provide additional security to the Leased Premises, as well as install cameras and access control systems reasonably necessary to secure the Leased Premises.

14. **Access:** Tenant, including its staff, agents and contractors shall have 24 hour, 7 days per week access to the Leased Premises. During Tenant's normal hours of operation Tenant, including its staff, patients, invitees and guests shall be provided access to the Leased Premises without requirement of keycard or other access device or code to the Building. Access during all other hours shall be by keycard or keypad access. Landlord shall provide at its sole cost and expense any keycards or access codes/devices for use by each Tenant staff member.

Tenant shall additionally have the right but no obligation to install a door from the Leased Premises to the atrium of the Canal Street entrance to the Building adjacent to the Leased Premises as set forth on Exhibit A hereto. Upon installation of such door Tenant shall have the right to use the entrance from Canal Street for the purposes of allowing access to the Leased Premises, subject to Tenant, at its option, either (i) installing glass doors in the atrium of the Canal Street entrance so as to maintain a secure entryway to the remainder of the Building, or (ii) installing an electronic remote access control system on the Canal Street entrance whereby Tenant can remotely monitor and unlock the Canal Street doors as needed for entry of staff, patients, invitees and guests. Door to the Leased Premises may be secured by Tenant with access controls as it deems appropriate.

15. **Entry and Inspection:** Tenant shall permit the Landlord to inspect the Leased Premises upon reasonable advance notice to the Tenant. Within ninety (90) days of the expiration of this Lease or any extension term thereof, Tenant shall allow

6

Landlord to post signage advertising the future availability of the Leased Premises. Landlord shall make all reasonable efforts to minimize disruption to Tenant's operations and minimize exposure of Landlord's employees, contractors and agents to confidential information located on Leased Premises, including but not limited to patient files.

16. **Indemnification:** Landlord and Tenant agree to indemnify and hold each other harmless from all claims, damages, liabilities, judgments, including reasonable attorney fees, which the other party may incur in connection with the negligent or reckless acts or negligent or reckless omissions of the other party or their agents and/or employees.

17. **Insurance:** At all times during the term of the Lease, Landlord shall maintain in effect, with a responsible insurance company or companies, policies of insurance covering the building of which the Leased Premises constitute a part, providing protection to the extent of not less than full replacement value of said building and improvements against all casualties included under standard insurance industry practices within the classification "Fire and Extended Coverage, Vandalism and Malicious Mischief." Nothing in this paragraph shall prevent the taking out of policies of blanket insurance; which may cover real and/or personal property and improvements in addition to the building of which the Leased Premises constitute a part provided, however, that in all other respects each such policy shall comply with the other provisions of this paragraph.

At all times during the term of the Lease, Landlord and Tenant shall carry and maintain general liability insurance with policy limits of not less than One Million Dollars & 00/100 ($1,000,000.00) per occurrence and Two Million & 00/100 ($2,000,000.00) in the aggregate. Landlord and Tenant shall name each other as additional insureds on the respective general liability policies pertaining to their respective interests in the leasehold estate. Landlord and Tenant shall provide to each other proof of insurance.

18. **Waiver of Subrogation:** Landlord and Tenant hereby grant to each other on behalf of any insurer providing any insurance to either Landlord or Tenant a waiver of any right of subrogation any such any such insurer of one party may acquire against the other by virtue of payment of any loss under any such insurance. Such waivers shall stand mutually terminated as of the date either Landlord or Tenant ceases to be empowered to grant same.

19. **Utilities:** Landlord agrees to separately meter or sub-meter all utility services to the Leased Premises. Tenant agrees to pay for all utility service to the Leased Premises. If utilities sub-metered the parties agree there shall be no mark up of utility bills to Tenant.

20. **Destruction of Building:** In the event of the partial destruction of the Leased Premises, from any cause, Landlord shall forthwith repair the building, provided that such repairs can and are made within one-hundred and twenty (120) days

7

under existing governmental laws and regulations, but such partial destruction shall not terminate this Lease, except that the Tenant shall not pay rent while Landlord makes the repairs. If the repairs may not be made within sixty (60) days, then Tenant, at its sole option, may terminate the Lease or agree with Landlord to allow the Lease to continue in exchange for an abatement of rent while the Landlord makes repairs.

21. **Taking:** If the entirety of Landlord's Property or so much of the Leased Premises as to render the balance unusable by Tenant shall be taken by condemnation, sale in lieu of condemnation or in any other manner for any public or quasi-public purpose (collectively "Condemnation"), this Lease shall terminate on the date that title or possession to the Leased Premises is taken by the condemning authority, whichever is earlier. In the event of any Condemnation, the entire award for such taking shall belong to Landlord, except that Tenant shall be entitled to any part of the award representing Tenant's moving and dislocation expenses and Tenant Improvements. Tenant shall have no claim against Landlord or the award for the value of any unexpired term of this Lease or otherwise.

22. **Medical and Hazardous Waste:** Tenant shall dispose of all medical and hazardous waste in accordance with local, state and federal law.

23. **Insolvency:** Tenant's insolvency, evidenced via bankruptcy, appointment of a receiver or general assignment for the benefit of creditors, and within sixty (60) days thereof the Tenant fails to secure a discharge thereof, such event shall constitute a default under this Lease.

24. **Remedies in the Event of Default or Breach:** In the event a party fails to observe or perform any other of the terms, covenants, or conditions of this Lease on its part to be observed or performed within thirty (30) days after written notice from the non-defaulting specifying the nature of such failure (except that such thirty (30) day period shall be automatically extended for an additional period of time reasonably necessary to cure such default, if such default is curable but cannot be cured with diligence within such thirty (30) day period and provided the defaulting party commences the process of curing such default within said thirty (30) day period and diligently pursues such cure to completion), then the defaulting party shall be deemed to be in default and the non-defaulting party may, at its option, terminate the Lease and recover damages allowed by law. As to Landlord, such right of recovery may include: (a) unpaid rent earned at the time of termination; (b) rent that would have become due after the date of termination until such time as the Landlord should have been reasonably expected to have relet the building or otherwise reasonably mitigated Landlord's damages; and, (c) any other damages allowed by law as reasonable expenses. Alternatively, Landlord may continue the Lease in effect, as long as Landlord does not terminate Tenant's right of possession, and Landlord may enforce all its rights and remedies under the Lease, including the right to recover rent as it becomes due under the Lease. Nothing contained herein shall be deemed to limit the parties other rights and remedies per law.

8

25. **Attorney Fees and Costs:**  In any action or proceeding between the parties related to this Lease, the prevailing party may recover reasonable costs and attorney fees as awarded by a court or arbitrator of competent jurisdiction.

26. **Waiver:**  The failure of either party to timely enforce any obligation within this Lease shall not constitute of a waiver of the right.

27. **Notices:**  Either party to this Lease shall provide any notices under this Lease in written form to the other party and forwarded via certified United States Mail with return receipt requested or other carrier service that provides proof of delivery.  Notice to the Tenant shall be to both its local clinic administrator and to its corporate office at and to:  Attention:  President, Dialysis Clinic, Inc., Suite 500, 1633 Church Street, Nashville, Tennessee 37203.  Notice to the Landlord shall be to Irish Channel Funding, LLC, PO Box 19201, New Orleans, Louisiana 70179.

28. **Quiet Enjoyment:**  Tenant, upon paying the rents reserved and observing and performing all of the terms and covenants on its part to be performed, shall peaceably and quietly enjoy the Leased Premises subject, nevertheless, to the terms of this Lease and to any mortgage, ground lease or other agreement to which this Lease is subordinate.

29. **Hold-Over Tenancy:**  Any holdover after the expiration of this Lease, with the consent of the Landlord, shall become a month-to-month tenancy.

30. **Heirs, Assigns and Successors:**  This Lease is binding upon and inures to the benefit of lawful heirs, assigns and successors.  This Lease may not be assigned by a party without the express written consent of the other party.  Notwithstanding the foregoing in this section, in the event Landlord sells the Building the Lease may be assigned to the purchaser without Tenant's consent subject to purchaser having assumed all of Landlord's obligations under this Lease and contingent on Tenant's right of possession and other terms of Lease remaining in full force and effect.  The parties hereto contemplate that this Lease should not and shall not be filed for record, but in lieu thereof, at the request of either party, Landlord and Tenant shall execute a Memorandum of Lease to be recorded for the purpose of giving record notice of the appropriate provisions of this Lease.

31. **Taxes:**  Tenant shall pay promptly when due all personal property taxes or other taxes and assessments levied and assessed by any governmental authority upon the property of Tenant in, upon or about the Leased Premises.  Landlord shall be responsible for paying all property taxes and assessments, including any special assessments, assessed or levied against the Landlord's Property, including the Leased Premises.

32. **Estoppel Certificate:**  In the event that the Landlord requests an Estoppel Certificate certifying to its creditors or potential creditors that the Lease is in full

9

force, unmodified and that the parties are not in breach thereof, then Tenant shall cooperate to sign and deliver any such reasonable Estoppel Certificate to Landlord or his designee within twenty (20) days. In exchange for Tenant executing an Estoppel Certificate on the Landlord's behalf and to the benefit of Landlord's creditor(s), Landlord and Landlord's creditor(s) shall agree in writing within the Estoppel Certificate to not disturb Tenant's possession and quiet enjoyment of the Leased Premises so long as Tenant is not in default under the Lease.

33. **Mortgage; SNDA:** Landlord, to the extent Landlord's Property or any portion thereof is subject to one or more mortgages, shall obtain from each mortgagee a subordination, non-disturbance and attornment agreement in a form reasonably acceptable to Tenant.

34. **Exclusivity of Dialysis Services on Landlord's Property.** Landlord shall not rent, license or otherwise permit the use of any portion of Landlord's Property by Landlord or other person or entity besides Tenant for the purposes of outpatient dialysis or related medical services without the prior written consent of Tenant.

35. **Brokerage or Management Fees:** Tenant's broker of record shall be Bruce Sossaman (a Louisiana licensed real estate broker) ("Tenant's Broker"). Tenant's Broker shall be paid a commission by Landlord of four percent (4%) of the guaranteed rents over the initial ten (10) year lease term, to be paid twenty-five percent (25%) upon Lease signing and seventy-five percent (75%) on commencement of lease. In the event Landlord has not complied with the payment schedule set forth herein Tenant may, but shall not be obligated to, pay such fees directly to Tenant Broker and offset such amounts against Rent accordingly.

36. **Approval for Tenant's Business Operation:** Tenant, at its own expense, shall obtain all necessary permits, licenses, and governmental approvals for the operation of an outpatient dialysis clinic, including but not limited to proper zoning of the Leased Premises. If Tenant shall be unable to obtain any and all such permits, licenses, and approvals for the operation of such facility, Tenant, at its option, may elect to (i) continue under this Lease, or (ii) terminate this Lease by written notice to the Landlord, in which event this Lease shall terminate with no further liability on either party, provided, however, that Tenant shall notify the Landlord, in writing, of any inability to obtain such permits, licenses, and governmental approvals.

37. **Compliance with Law:** This Lease shall be construed to be in accordance with any and all federal and state statutes, rules, regulations, principles and interpretations, including Medicare and Medicaid. In the event there is a change in Medicare, Medicaid or other federal or state statutes or rules, regulations, principles or interpretations that render any of the material terms of this Lease unlawful or unenforceable, including any services rendered or compensation to be paid hereunder, either party shall have the immediate right to initiate the

renegotiation of the affected term or terms of this Lease, upon notice to the other party, to remedy such condition. Should the parties be unable to renegotiate the term or terms so affected so as to bring it/them into compliance with the statute, rule, regulation, principle or interpretation that rendered it/them unlawful or unenforceable with thirty (30) days of the date on which notice of a desire renegotiation is given, then either party shall be entitled, after the expiration of said initial thirty (30) day period, to terminate this Lease.

38. **Governing Law:** This Lease shall be governed by the laws of the State of Louisiana, without regard to conflicts of law principles.

39. **Severability:** In the event any provision of this Lease is found to be unenforceable, the remainder of this Lease shall not be affected, and any provision found to be invalid shall be enforceable to the extent permitted by law. The parties agree that in the event two different interpretations may be given to any provision hereunder, one of which shall render the provision unenforceable, and one of which shall render the provision enforceable, the interpretation rendering the provision enforceable shall be adopted.

40. **Confidentiality.** Landlord and Tenant shall keep confidential the terms of this Agreement and neither Landlord nor Tenant shall release such terms to any third party without the other party's consent, other than to their respective officers, directors, employees, agents or contractors, and then only to the extent necessary for the conduct of their business, or where disclosure is required by judicial process or where disclosure by Tenant is required by applicable governmental laws, regulations and policies.

41. **Entire Agreement:** This Lease represents the entire agreement of the parties and may not be modified except in writing signed by both parties.

**IN WITNESS WHEREOF,** the parties hereto have executed this Sub-Lease as of the day and year first above written.

**DIALYSIS CLINIC, INC.**

By: _____
    Ed Attrill, President or
    Bill Wood, Secretary/Treasurer or
    Joe Swearingen, Asst. Treasurer

Date: _12/28/12_

**IRISH CHANNEL FUNDING, LLC**

By: _____
Print Name: _Bruce Martin_
Title: _Owner_

Date: _12/18/12_

11

# EXHIBIT A
## PROPERTY DIAGRAM(S)





12

# IRISH CHANNEL FUNDING, LLC.
## · *a real estate company* ·

March 14, 2014

Attn: Ed Attrill, President
Dialysis Clinic, Inc.
1633 Church Street, Suite 500
Nashville, TN 37203

Dear Mr. Attrill,

Please be advised that I am the Owner of Irish Channel Funding, L.L.C. ("ICF"). On March 1, 2014, the lease between Dialysis Clinic, Inc. ("DCI") and ICF commenced. Therefore, the rent for the first month of the term of the lease is overdue to ICF. To date, ICF has not received any payment for the rent from DCI. Most recently, our counsel informed us that counsel for DCI, Mr. George Fagan, is in receipt of the rent from DCI.

Please let this letter serve as demand for payment of the first month of rent including the $200.00 late fee. Should you fail to make payment to ICF within the thirty (30) day cure period provided by the lease, DCI shall be in default of the lease agreement. At that point, ICF will determine how ICF wishes to proceed, if at all, with the current lease agreement. Please direct all correspondence, questions and/or comments to our counsel, Jeffrey M. Siemssen of Nicaud & Sunseri at (504) 837-1304.

Sincerely,



Bruce Martin
Owner & COO

cc:    George Fagan, email
       Kassidy Addison

1661 CANAL STREET, SUITE 1002 NEW ORLEANS, LOUISIANA 70112
OFFICE 504.265.0890 FAX 504.324.8158

EXHIBIT
B



```
=================================
        MIDCITY FINANCE
      New Orleans, Louisiana
           701194928
        2165690019-0098
03/19/2014 (800)275-8777 02:28:36 PM
=================================
======= Sales Receipt =======
Product        Sale Unit    Final
Description     Qty Price    Price

Mail Pickup         Delivered
Label # 4207017994108096999397485521331
Mail Pickup         Delivered
Label # 4207017994055098999374169756181
# of Mailpieces :  2
Mail Pickup Date: 03/19/2014 02:24 PM
GRETNA LA 70056 Zone-1       $0.49
First-Class Mail Letter
0.70 oz.
Expected Delivery: Thu 03/20/14
Return Rcpt (Green           $2.70
Card)
@@ Certified                 $3.30
USPS Certified Mail #:
7007149000033053269
                           ========
Issue PVI:                   $6.49

NASHVILLE TN 37203 Zone-4    $0.49
First-Class Mail Letter
0.70 oz.
Expected Delivery: Sat 03/22/14
Return Rcpt (Green           $2.70
Card)
@@ Certified                 $3.30
USPS Certified Mail #:
7007268000232546495
                           ========
Issue PVI:                   $6.49

                          ==========
Total:                      $12.98

Paid by:
AMEX                        $12.98
   Account #:     XXXXXXXXXXXXX6025
   Approval #:        517019
   Transaction #:        90
   239032712371174705137

@@ For tracking or inquiries go to
USPS.com or call 1-800-222-1811.

Order stamps at usps.com/shop or
call 1-800-Stamp24. Go to
usps.com/clicknship to print
shipping labels with postage. For
other information call
1-800-ASK-USPS.
***********************************
***********************************
Get your mail when and where you
```

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ED ATTRILL
DIALYSIS CLINIC, INC
1633 CHURCH ST
STE 500
NASHVILL, TN 37203

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [illegible] ☐ Agent ☐ Addressee

B. Received by (Printed Name) [illegible] C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7007 2680 0002 3254 6495

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

KASSIDY ADDISON
1010 BEHRMAN HGHY
GRETNA, LA 70056

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [illegible] ☐ Agent ☐ Addressee

B. Received by (Printed Name) [illegible] C. Date of Delivery [illegible]

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7007 1490 0003 3305 3264

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

# NICAUD & SUNSERI, L.L.C.

### A Group of Professional Law Corporations
3000 18th Street
Metairie, Louisiana 70002

Albert J. Nicaud*
J. Douglas Sunseri*
Svetlana "Lana" Crouch
Jeffrey M. Siemssen
(*A Professional Law Corporation)

Of Counsel
Edward C. Vocke, IV

Telephone (504) 837-1304
Facsimile (504)833-2843
anicaud@nslawla.com

April 8, 2014

**VIA E-MAIL at Gfagan@LeakeAndersson.com**
George D. Fagon
Leake & Anderson
1100 Poydras Street
Suite 1700
New Orleans, LA 70163

|  |  |
|---|---|
| RE: | Termination of Lease |
| SUBJECT: | 1661 Canal Street, Suite 1001 |
|  | My file: 13-1161 |

Dear Mr. Fagan,

Irish Channel Funding, L.L.C. ("ICF") hereby notifies Dialysis Clinic, Inc. ("DCI") that the lease between ICF and DCI of the premises at 1661 Canal Street, Suite 1001, New Orleans, Louisiana 70112 is terminated.  On or about March 19, 2014, ICF served notice upon DCI concerning the commencement of DCI's obligation to pay rent to ICF.  On April 3, 2014, you responded to the March 19, 2014 correspondence by stipulating that DCI had no intention of paying the March and April rents to ICF at this time.  As a result, due to DCI's continuing breach of the lease for failure to pay rents, ICF hereby terminates said lease.

You are required to vacate and deliver possession of the premises no later than 5 days from your receipt of this notice.  Should you fail to vacate, legal proceedings will be instituted without further notice.

Best regards,

JEFFREY M. SIEMSSEN

JMS/mb
cc:   Kassidy Addison, via certified mail
      Ed Attrill, via certified mail

